IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

<table>
<tr><td>

KILMAR ARMANDO ABREGO GARCIA,
et al.,

*Plaintiffs-Appellees*,

v.

KRISTI NOEM, Secretary of Homeland
Security, et al.,

*Defendants-Appellants*.

</td><td>

No. 25-1345

</td></tr>
</table>

**EMERGENCY MOTION FOR STAY PENDING APPEAL
AND IMMEDIATE ADMINISTRATIVE STAY**

Late Friday afternoon, a federal district judge ordered the United States to force El Salvador to send one of its citizens—a member of MS-13, no less—back to the United States by midnight on Monday. If there was ever a case for an emergency stay pending appeal, this would be it.

Kilmar Armando Abrego Garcia is presently being held in El Salvador, by the El Salvadoran Government. The United States does not have control over Abrego Garcia. Or the sovereign nation of El Salvador. Nevertheless, the court's injunction commands that Defendants accomplish, somehow, Abrego Garcia's return to the United States in give or take one business day.

That order is indefensible.  Foremost, it commands Defendants to do something they have no independent authority to do: Make El Salvador release Abrego Garcia, and send him to America.  That is why Plaintiffs did not even ask the district court for an order directing Abrego Garcia's return. As Plaintiffs themselves acknowledged, a federal court "has no jurisdiction over the Government of El Salvador and cannot force that sovereign nation to release Plaintiff Abrego Garcia from its prison."  Emergency TRO Mot., ECF No. 2, at 2.  That concession is all that is needed to order a stay here.  No federal court has the power to command the Executive to engage in a certain act of foreign relations; that is the exclusive prerogative of Article II, immune from superintendence by Article III.  But that is exactly what this order does. Indeed, it is the only thing it does—requiring Defendants, on the clock, to try to force a foreign country to take a discrete action.  That sort of FRCP 65 diplomacy is simply intolerable in our system of government.

Those are the most pressing defects with the court's order, but they are by no means the only ones.  As fundamental, the district court entered its order without jurisdiction under the immigration laws.  And in all events, Plaintiffs failed to carry their burden on the equities.  Among much else, Abrego Garcia has been found to be a member of a designated Foreign

Terrorist Organization, MS-13. Given that status, he has no legal right or basis to be in the United States at all; and more to the present point, no right to withholding relief under the INA. The public interest obviously disfavors his return, let alone a slapdash one conducted as the result of judicial fiat.

Absent this Court's immediate intervention, though, Defendants will be ordered to engage in breakneck foreign policy at the direction of a federal district court. That is untenable. Accordingly, Defendants respectfully request an emergency stay pending appeal of the district court's preliminary injunction. Given the importance of the issues presented, the harms caused by the injunction, and the short timeframe for the Government to comply with the district court's order, the Government requests a ruling no later than 5pm on Sunday, April 6, 2025. In the meantime, Defendants respectfully request that this Court issue an **<u>immediate administrative stay</u>**.[1]

---

[1] Because of the imminent timeline of the district court's order and because of the importance of the issues presented, Defendants will be concurrently seeking a stay pending appeal from the district court. *See* Fed. R. App. P. 8(a)(1).

**STATEMENT**

Plaintiff Abrego Garcia is a citizen and native of El Salvador. Final Removal Order, ECF No. 1-1, at 1. In March 2019, Abrego Garcia was served a notice to appear in removal proceedings, charging him as inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i). *Id.* at 1–2. He has never been lawfully admitted into the United States. *See id.* (recounting his concession he did not enter after inspection by an immigration officer); 8 U.S.C. § 1101(a)(13)(A) (defining "admission" as "lawful entry of the alien into the United States after inspection and authorization by an immigration officer").

At a bond hearing, the immigration judge found that Abrego Garcia presented a danger to his community and that he had failed to refute the evidence that showed he was a verified member of MS-13. IJ Bond Order, ECF No. 11-1, at 2–3. That evidence included that a "past, proven, and reliable source of information" had verified Abrego Garcia's membership in MS-13, his rank, and his gang name. *Id.* The court denied bond. *Id.*; *see also* BIA Opinion, ECF No. 11-2, at 1–2 (adopting and affirming IJ Bond Order, specifically finding no clear error in its dangerousness finding). Separately, the immigration court found Abrego Garcia removable, given that Abrego

Garcia had "admitted" that he entered the country illegally and that he was removable "as charged." Final Removal Order 1–2.

Abrego Garcia then filed an I-589 application for asylum, statutory withholding of removal, and protection under the regulations implementing the United Nations Convention Against Torture ("CAT"). *Id.* at 2. On October 10, 2019, an immigration judge issued a final removal order denying Abrego Garcia's application for asylum and protection under the CAT, but granting him statutory withholding of removal to El Salvador. *Id.* at 14. The court reasoned that Abrego Garcia had a fear of persecution, because of his membership in a "particular social group" given that his mother's "family pupusa business was well-known in the community." Dkt. 1-1, at 10. Notwithstanding that withholding of removal to El Salvador, Abrego Garcia has no lawful status within the United States.

On February 6, 2025, Secretary of State Marco Rubio, in consultation with Attorney General Pamela Bondi and Secretary of the Treasury Scott Bessent, designated MS-13 a Foreign Terrorist Organization pursuant to INA § 219 (codified at 8 U.S.C. § 1189). 90 Fed. Reg 10030, 10030–31 (Feb. 6, 2025). In so doing, he "concluded that there is a sufficient factual basis to find" that MS-13 "engages in terrorist activity or terrorism, or retains the capability and

intent to engage in terrorist activity or terrorism" that "threatens the security of United States nationals or the national security of the United States." *Id.*; *see* 8 U.S.C. § 1189(a)(1)(B)–(C).

On March 12, 2025, Abrego Garcia was stopped by ICE officers, who he alleged told him that his immigration status had changed. *Id.* ¶¶ 48–50; *see also* Cerna Decl., ECF No. 11-3, ¶ 11. After being detained, he was questioned about gang affiliations and transferred ultimately to a detention center in Texas. Compl. ¶¶ 53, 56; Cerna Decl. ¶¶ 2, 11. Abrego Garcia alleged that he was told he would be removed to El Salvador, and detained at the CECOT prison there. Compl. ¶¶ 56–57 & n.1.

On March 15, Abrego Garcia was removed to El Salvador. He was sent to that country due to an administrative error. Cerna Decl. ¶¶ 12–15.

## B.    Procedural History

On March 24, 2025, Plaintiffs—Abrego Garcia, his wife, and their child—filed their complaint, raising five claims: a violation of the removal statute; two violations of the Due Process Clause; an APA claim; and a habeas claim. As for his requested relief, Abrego Garcia asked, most of all, that Defendants "take all steps reasonably available to them, proportionate

to the gravity of the ongoing harm, to return Plaintiff Abrego Garcia to the United States." Compl., Request for Relief ¶ d.

At the same time, Plaintiffs filed an *ex parte* emergency motion for a temporary restraining order. That motion asked the court to "temporarily order Defendants to immediately stop paying compensation to the Government of El Salvador for the detention of Plaintiff Abrego Garcia," and to "request that the Government of El Salvador return Plaintiff Abrego Garcia to [Defendants'] custody, for such time until a preliminary injunction motion can be briefed and decided." Emergency TRO Mot. 7. In that motion, Plaintiffs conceded that the district court "has no jurisdiction over the Government of El Salvador and cannot force that sovereign nation to release" Abrego Garcia. *Id.* ¶ 4. The district court denied the emergency motion without prejudice for failure to comply with Fed. R. Civ. P. 65(b).

Plaintiffs filed a renewed motion for a temporary restraining order the next day, again conceding the district court's lack of jurisdiction over El Salvador and inability to compel it to release Abrego Garcia. Renewed TRO Mot., ECF No. 6, ¶ 3 ("This Court admittedly has no jurisdiction over the Government of El Salvador and cannot force that sovereign nation to release Plaintiff Abrego Garcia from its prison."). Plaintiffs again requested that the

district court "temporarily order" Defendants to stop paying El Salvador for Abrego Garcia's detention, and to request El Salvador return him to Defendants' custody until a preliminary-injunction motion could be decided. *Id.* ¶ 7.

The district court set a briefing schedule and ordered a hearing for April 4, 2025. *See generally* Ltr. Order, ECF No. 8; Mem. Supp. TRO Mot., ECF No. 10; Corr. Mem. in Opp'n, ECF No. 12; Reply, ECF No. 13. That day, the district court, construing Plaintiffs' TRO filing as one for a preliminary injunction, granted Plaintiffs' motion. But the district court ordered relief that was far broader from what was requested in both that motion, and also the underlying complaint: The court ordered Defendants to "facilitate and effectuate the return of [Abrego Garcia] to the United States by no later than 11:59 PM on Monday, April 7, 2025." Order, ECF No. 21, at 2.

Defendants timely appealed that same day, Notice of Appeal, ECF No. 22, and now move this Court for an emergency administrative stay and a stay pending appeal.

## ARGUMENT

A stay pending appeal turns on "(1) whether the stay applicant . . . is likely to succeed on the merits; (2) whether the applicant will be irreparably

injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties . . . ; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 426 (2009) (quotation marks omitted).  In suits against the Government, the latter two factors merge.

## I.  The Order Is Indefensible on the Merits.

The district court's order—a command to "facilitate and effectuate" Abrego Garcia's return from a foreign country by midnight on Monday—is unlawful.  There is no likelihood that it would survive review on appeal.

**1.**  The order below is neither possible nor proper. As noted, Abrego Garcia is an El Salvadoran national, being held in El Salvador, at the hands of the El Salvadoran government.  Or as the Plaintiffs themselves put it, Abrego Garcia is in the custody of a foreign sovereign over whom America "has no jurisdiction."  Emergency TRO Mot. ¶ 4; *see also* Renewed TRO Mot. ¶ 3.  Because the United States has no control over Abrego Garcia, however, Defendants have no independent authority to "effectuate" his return to the United States—any more than they would have the power to follow a court order commanding them to "effectuate" the end of the war in Ukraine, or a return of the hostages from Gaza.

Indeed, in light of all of this, *Plaintiffs themselves* disclaimed that they were asking for such relief—instead asking only that Defendants either request that El Salvador release Abrego Garcia, or cease compensating El Salvador for its detention of him. *E.g.*, Emergency TRO Mot. ¶ 4; Renewed TRO Mot. ¶ 3; Mem. Supp. TRO Mot. 10–11.

That alone is basis enough to stay the order. The federal courts are courts of limited jurisdiction; they have the circumscribed authority to act upon motions as presented by the parties, not "sally forth each day looking for wrongs to right." *United States v. Sineneng-Smith*, 590 U.S. 371, 376 (2020).

But even on Plaintiffs' preferred (and requested) framing, the order is not salvageable. Even if the court below had only ordered the Defendants to withhold funding or make a request, that would still run headlong into the separation of powers. The federal courts' equitable authority is conditioned by the structure of the Constitution. *In re Trump*, 958 F.3d 274, 297 (4th Cir. 2020) (Wilkinson, J., dissenting). And for that reason, "the federal equity power cannot extend beyond what the separation of powers will allow." *Id.*; *see Guaranty Trust Co. of N.Y. v. York*, 326 U.S. 99, 104-07 (1945). A federal court therefore cannot use its Article III authority to coopt a core prerogative of Article II. But that is this order to a tee. The Supreme

Court has long held that the President is "the sole organ of the federal government in the field of international relations," *United States v. Curtiss-Wright Export Corp.*, 299 U.S. 304, 320 (1936), whose branch is entrusted with significant independent authority over foreign affairs, *see, e.g.*, *Trump v. United States*, 603 U.S. 593, 608-09 (2024).  A judicial order that forces the Executive to engage with a foreign power in a certain way, let alone compel a certain action by a foreign sovereign, is constitutionally intolerable.

Indeed, even in its faintest light, the order below forces Defendants to ask El Salvador to release one of its own citizens from one of its prisons, and send him to the United States.  Such a request—one made to a foreign ally, on a hyper-sensitive subject, involving a designated terrorist—is freighted with foreign policy considerations.  And it is simply not something that a federal court can order the Executive Branch to do. *See, e.g.*, *Lin v. United States*, 690 F. App'x 7, 8–9 (D.C. Cir. 2017) (dismissing suit where "Plaintiffs' injury can only be redressed by foreign nations not before the court").

**2.**  Even putting aside these fundamental defects, the order below also runs into a statutory bar.  Section 1252(g) strips district courts of jurisdiction to review "*any* cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to … execute removal orders

against any alien" under the INA, except as otherwise provided in § 1252. 8 U.S.C. § 1252(g) (emphasis added). This is such a suit. The district court thus lacked jurisdiction over this case, and lacked authority to issue its order. *See Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999).

Where applicable, § 1252(g)'s "sweep is firm." *E.F.L. v. Prim*, 986 F.3d 959, 964 (7th Cir. 2021). It "precludes judicial review of 'any' challenge to 'the decision or action by [DHS] to . . . execute removal orders,'" which "includes challenges to DHS's 'legal authority' to do so." *Id.* at 965 (alteration in original); *see also, e.g.*, *Camarena v. Director, ICE*, 988 F.3d 1268, 1273–74 (11th Cir. 2021) ("No matter how [the plaintiffs] characterize their claims, they amount to an attack on the Government's execution of their removal orders. That runs afoul of § 1252(g): If we held otherwise, any petitioner could frame his or her claim as an attack on the Government's *authority* to execute a removal order rather than its *execution* of a removal order.").

There is no doubt that a removal order was issued against Abrego Garcia. Final Removal Order 2; EOIR Automated Case Information, ECF No. 1-5, at 2 ("No appeal was received for this case."). And there is no doubt that Abrego Garcia was removed pursuant to that order. Indeed, that is precisely what the complaint in this case challenged. *See, e.g.*, Compl. ¶ 63

(alleging that Defendants "decided to deport Plaintiff Abrego Garcia without following the law"). Abrego Garcia's challenge to the execution of his removal order falls squarely within the plain terms of § 1252(g). *See, e.g., Silva v. United States*, 866 F.3d 938, 940 (8th Cir. 2017).

Abrego Garcia argued otherwise below, on the ground he received withholding of removal relief to El Salvador. Reply 6–9. But as the Supreme Court has made clear, removal orders and withholding orders are "distinct." *Johnson v. Guzman Chavez*, 594 U.S. 523, 539 (2021). And just as important, a withholding order does not "affect the validity of the underlying removal order." *Id.* at 540. Accordingly, even if a removal runs afoul of some other legal bar (such as withholding relief), it is still the "execution" of a "removal order" under the very terms of § 1252(g). The federal courts thus cannot act upon any "claim" challenging such an execution, "[e]xcept as provided" elsewhere § 1252—an exception not even Plaintiffs have argued applies here.[2]

---

[2] Even if § 1252(g) did not apply, Plaintiffs' claims sound in habeas, and would have had to have been brought via that exclusive remedy when Abrego Garcia was still within the United States. *Nance v. Ward*, 597 U.S. 159, 167 (2022). But now, Abrego Garcia is beyond the territorial bounds of the United States, and Plaintiffs have conceded that he is not in United States custody. *See* Mem. Supp. TRO Mot. 2; *see also Munaf v. Geren*, 553 U.S. 674,

**3.** At minimum, the relief ordered was overbroad. An injunction must be narrowly tailored to address a plaintiff's asserted harm. *See, e.g.*, *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979). But here, Abrego Garcia's injury was pegged exclusively to his return to El Salvador. He did not claim an entitlement to be in the United States; nor did he raise any concerns with being sent to some third country. In that light, ordering Abrego Garcia returned to the United States—and *only* the United States—was an invalid and untailored request. And it further compounded the district court's overreach. As a matter of both sound immigration policy and responsible foreign policy, the United States regularly relies on being able to remove aliens to third countries, when there are issues with returning them to their place of origin. The district court erred in interfering with that.

## II. The Equities Foreclose Returning a Member of MS-13 to America.

As a matter of law, the order below cannot stand. And as a matter of equity, it should not. The public interest cuts firmly against ordering Abrego Garcia—a member of a designated terrorist organization, who is in turn no

---

686 (2008) (a person "is held 'in custody' by the United States when the United States official charged with his detention has 'the power to produce him'" (quoting *Wales v. Whitney*, 114 U.S. 564, 574 (1885))).

longer eligible for withholding relief—back to the United States. And on the other side of the ledger, he fails to offer any compelling irreparable harm that would justify this injunction.

**1.** In 2019, an immigration judge concluded that "the evidence shows that [Abrego Garcia] is a verified member of MS-13" and that he "has failed to present evidence to rebut that assertion." IJ Order 2-3. It concluded too that as a member of a notorious and violent gang, he presents a danger to Americans. *Id.* That conclusion was then affirmed by the BIA. BIA Opinion 1–2. And it remains true today. As Acting Field Office Director Cerna explained in his sworn declaration, Abrego Garcia was arrested this March "due to his prominent role in MS-13." Cerna Decl. ¶ 11; *see also id.* ¶ 15.

Accordingly, while there is no doubt a "public interest in preventing aliens from being wrongfully removed," *Nken*, 556 U.S. at 435, there is an overwhelming public interest in not importing members of violent transnational gangs into this country, *see id.* at 436 (noting a heightened "interest in prompt removal" if an "alien is particularly dangerous"). It is no answer, moreover, that Abrego Garcia might be detained on his return. Even if detained, it is common course for gang members to stoke violence against government officials and other detainees, or recruit others to their

ranks. *See* Michael E. Miller, Wash. Post, "*Vying for Control": How MS-13 Uses Violence and Extortion in America's Jails* (Feb. 4, 2018).[3] Regardless, the degree of danger that Abrego Garcia presents to the United States is the precise sort of national security judgment on which the Executive is entitled to peak deference. *See Trump v. Hawaii*, 585 U.S. 667, 704 (2018).

**2.** It is true that an immigration judge concluded six years ago that Abrego Garcia should not be returned to El Salvador, given his claims about threats from a different gang. Final Removal Order 7–10. That conclusion was dubious then (and increasingly so now). But it has become totally untenable, given the Secretary of State's designation of MS-13 as a Foreign Terrorist Organization in February. 90 Fed. Reg. at 10030–31.

As a result of that designation, and Abrego Garcia's membership in that terrorist organization, he would no longer be eligible for withholding relief under the federal immigration laws. 8 U.S.C. §§ 1231(b)(3)(B)(iv); 1227(a)(4)(B). And as even Plaintiffs admit, the Government had available a procedural mechanism under governing regulations to reopen the

---

[3] *Available at* https://www.washingtonpost.com/local/vying-for-control-how-ms-13-uses-violence-and-extortion-in-americas-jails/2018/02/04/c8b8ab92-06c8-11e8-8777-2a059f168dd2_story.html.

immigration judge's prior order, and terminate its withholding protection. *See* Reply 8. To be sure, the Government did not avail itself of that procedure in this case. But through the lens of the public interest, the district court's stunning injunction does not fit that error. A mistake of process does not warrant the unprecedented remedy ordered—one that demands the return of a foreign terrorist from the foreign sovereign that agreed to take him.

**3.** For their part, Plaintiffs fail to marshal any compelling irreparable harm that would warrant injunctive relief, let alone offset the above. Below, Plaintiffs alleged two forms of irreparable harm: The separation of Plaintiffs' family, and the alleged risk that Abrego Garcia will be tortured or killed in CECOT. Mem. Supp. TRO Mot. 8. Neither works.

As to the former, family separation, Plaintiffs themselves effectively concede that this injury would not be redressable by the relief they seek. After all, Plaintiffs agree (as they must) that Abrego Garcia can be removed from the United States, and thus separated from his family; their sole objection is to him being removed to El Salvador. Regardless, family separation is endemic to immigration proceedings, and is thus not the sort of cognizable harm that can give rise to extraordinary relief. *See Nken*, 556 U.S. at 435.

As for the latter, Plaintiffs have not come close to showing that Abrego Garcia will likely be tortured or killed in CECOT. For starters, the Executive Branch has asserted that no such danger exists. *See generally* 90 Fed. Reg. 14514 (Apr. 2 2025). That is virtually dispositive. *See Kiyemba v. Obama*, 561 F.3d 509, 515 (D.C. Cir. 2009) ("[S]eparation of powers principles . . . preclude the courts from second-guessing the Executive's assessment of the likelihood a detainee will be tortured by a foreign sovereign.").

Indeed, the United States, as a party to the Convention Against Torture, is committed not to return a person to a country where that person is likely to be tortured. *See* 8 C.F.R. § 1208.18. And, as one of Plaintiffs' declarants concedes: "El Salvador is a signatory to both the Convention Against Torture and the International Covenant on Civil and Political Rights." Bishop Decl., ECF No. 10-3, ¶ 32. The United States has ensured that removed aliens will not be tortured, and Defendants would not have removed *any* alien to El Salvador for detention in CECOT if it believed that doing so would violate the United States' obligations under the Convention. And they did not do so here.

For their part, Plaintiffs have pointed to little evidence about conditions in CECOT itself, instead extrapolating from allegations about

conditions in *different* El Salvadoran prisons. *See* Goebertus Decl., ECF No. 10-2, ¶¶ 2–4; Bishop Decl., ¶¶ 24 & n.17, 30 & n.27. While there may be allegations of abuses in other El Salvadoran prisons—very few in relation to the large number of detainees—there is no clear showing that Abrego Garcia himself is likely to be tortured or threatened in CECOT, let alone a clear enough showing for a federal court to displace the settled judgment of the Executive Branch.

***

Here and elsewhere, this Court should thus restore the constitutional balance, and correct the district court's attempted usurpation of the Executive Branch. The order below represents an "unwarranted judicial interference in the conduct of foreign policy" to the highest degree. *Kiobel v. Royal Dutch Petroleum Co.*, 569 U.S. 108, 116 (2013). It is an injunction to force a foreign sovereign to send back a foreign terrorist within three days' time. That is no way to run a government. And it has no basis in American law.

**CONCLUSION**

The order below should be immediately administratively stayed, and it should be stayed pending appeal.

Respectfully submitted,

**Yaakov M. Roth**
Acting Assistant Attorney General
Civil Division

**Drew C. Ensign**
Deputy Assistant Attorney General
Office of Immigration Litigation

s/August E. Flentje
**August E. Flentje**
Acting Director
Office of Immigration Litigation
Civil Division
U.S. Department of Justice
P.O. Box 878, Ben Franklin Station
Washington, DC 20044-0878
(202) 514-3309
august.flentje@usdoj.gov

**Christopher Ian Pryby**
Trial Attorney
Office of Immigration Litigation

Dated: April 5, 2025

*Counsel for Defendants–Appellants*

**Certificate of Compliance with Type-Volume Limit,
Typeface Requirements, and Type-Style Requirements**

1.      This document complies with the type-volume limit of Fed. R. App.

P. 27(d)(2)(A) because, excluding the parts of the document exempted

by Fed. R. App. P. 32(f), it contains 4050 words.

2.      This document complies with the typeface and type-style

requirements of Fed. R. App. P. 32(a)(5)–(6) because it has been

prepared in a proportionally spaced typeface (14-point Book

Antiqua) using Microsoft Word for Microsoft 365.

Dated: April 5, 2025                              s/ August E. Flentje
                                                  *Counsel for Respondent*