Case No. 25-1345

---

# UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

---

KILMAR ARMANDO ABREGO GARCIA, ET AL.,
*Plaintiffs-Appellees,*

v.

KRISTI NOEM, ET AL.,
*Defendants-Appellants.*

---

On Appeal from the U.S. District Court
for the District of Maryland
Case No. 8:25-CV-00951-PX

---

## PLAINTIFFS-APPELLEES' OPPOSITION TO
## EMERGENCY MOTION FOR STAY PENDING APPEAL
## AND IMMEDIATE ADMINISTRATIVE STAY

---

**MURRAY OSORIO PLLC**
Simon Y. Sandoval-Moshenberg
4103 Chain Bridge Road, Suite 300
Fairfax, Virginia 22030
(703) 352-2399
ssandoval@murrayosorio.com

**QUINN EMANUEL URQUHART &**
**  SULLIVAN, LLP**
Jonathan G. Cooper
1300 I St. NW, Suite 900
Washington, DC 20005
(202) 538-8000
jonathancooper@quinnemanuel.com

Andrew J. Rossman
295 Fifth Avenue, 9th Floor
New York, NY 10016
(212) 849-7000
andrewrossman@quinnemanuel.com

*Counsel for Plaintiffs-Appellees* (*additional counsel listed below*)

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. ii

INTRODUCTION .............................................................................. 1

STATEMENT OF FACTS AND PROCEDURAL HISTORY ................................. 5

ARGUMENT ..................................................................................... 8

I.    THE GOVERNMENT DOES NOT SATISFY THE TEST FOR A
      STAY PENDING APPEAL. ............................................................. 8

      A.    The Government Has Not Made A Strong Showing Of Likely
            Success On The Merits.......................................................... 9

            1.    The District Court's Order Is Proper And Possible. ................. 9

            2.    Section 1252(g) Does Not Bar Jurisdiction. ........................13

            3.    Habeas Does Not Provide The Exclusive Remedy, And, In
                  Any Event, Habeas Relief Is Available.................................16

      B.    The Government Does Not Show Irreparable Harm. ..................17

      C.    A Stay Would Substantially Injure Plaintiff Abrego Garcia. ......18

      D.    The Public Interest Favors Denying A Stay. ...........................19

II.   THE COURT SHOULD DENY AN ADMINISTRATIVE STAY. ..............21

CONCLUSION ....................................................................................22

## TABLE OF AUTHORITIES

**Cases**

*Abu Ali v. Ashcroft*,
   350 F. Supp. 2d 28 (D.D.C. 2004) ........................................................................16

*Arce v. United States*,
   899 F.3d 796 (9th Cir. 2018) ...............................................................................15

*Boumediene v. Bush*,
   553 U.S. 723 (2008) .............................................................................................16

*Bowrin v. INS*,
   194 F.3d 483 (4th Cir. 1999) ......................................................................... 13, 15

*Camarena v. Director, ICE*,
   988 F.3d 1268 (11th Cir. 2021) ...........................................................................15

*Doe #1 v. Trump*,
   957 F.3d 1050 (9th Cir. 2020) .............................................................................18

*E.F.L. v. Prim*,
   986 F.3d 959 (7th Cir. 2021) ...............................................................................15

*Elrod v. Burns*,
   427 U.S. 347 (1976) .............................................................................................19

*Enriquez-Perdomo v. Newman*,
   54 F.4th 855 (6th Cir. 2022) ................................................................................14

*Flynn v. Shultz*,
   748 F.2d 1186 (7th Cir. 1984) .............................................................................10

*Garcia v. Garland*,
   73 F.4th 219 (4th Cir. 2023) ................................................................................11

*Giovani Carandola, Ltd. v. Bason*,
   303 F.3d 507 (4th Cir. 2002) ..................................................................................4

*Gordon v. Barr*,
   965 F.3d 252 (4th Cir. 2020) ......................................................................... 10, 11

*J.G.G. v. Trump*,
   2025 WL 890401 (D.D.C. Mar. 24, 2025) .................................................. 19, 22

*J.G.G. v. Trump*,
   2025 WL 914682 (D.C. Cir. Mar. 26, 2025) ......................................................13

*Jarpa v. Mumford*,
   211 F. Supp. 3d 706 (D. Md. 2016) ...................................................................17

*Johnson v. Guzman Chavez*,
   594 U.S. 523 (2021) ..........................................................................................15

*KalshiEX LLC v. CFTC*,
   119 F.4th 58 (D.C. Cir. 2024) ...........................................................................17

*Kong v. United States*,
   62 F.4th 608 (1st Cir. 2023) ..............................................................................15

*Lopez-Sorto v. Garland*,
   103 F.4th 242 (4th Cir. 2024) ............................................................................11

*Madu v. Att'y Gen.*,
   470 F.3d 1362 (11th Cir. 2006) .........................................................................15

*Melendres v. Arpaio*,
   695 F.3d 990 (9th Cir. 2012) .............................................................................19

*Nken v. Holder*,
   556 U.S. 418 (2009) ................................................................................... passim

*Nunez-Vasquez v. Barr*,
   965 F.3d 272 (4th Cir. 2020) ....................................................................... 10, 11

*Orabi v. Att'y Gen.*,
   738 F.3d 535 (3d Cir. 2014) ..............................................................................10

*Ramirez v. Sessions*,
   887 F.3d 693 (4th Cir. 2018) ............................................................. 2, 10, 11, 18

*Reno v. AADC*,
   525 U.S. 471 (1999) ..........................................................................................13

*Robertson v. Jackson*,
    972 F.2d 529 (4th Cir. 1992) ................................................................13

*Saravia v. Sessions*,
    280 F. Supp. 3d 1168 (N.D. Cal. 2017) ...............................................17

*Silva v. United States*,
    866 F.3d 938 (8th Cir. 2017) ................................................................15

*U.S. Navy Seals 1-26 v. Biden*,
    27 F.4th 336 (5th Cir. 2022) ...................................................................8

*United States v. Arbaugh*,
    951 F.3d 167 (4th Cir. 2020) ................................................................16

*United States v. Texas*,
    144 S. Ct. 797 (2024) ............................................................................21

*Vitkus v. Blinken*,
    79 F.4th 352 (4th Cir. 2023) .................................................................20

*Williams v. Zbaraz*,
    442 U.S. 1309 (1979) (Stevens, J., in chambers) ...................................8

*Zayre-Brown v. N.C. Dep't of Adult Corrections*,
    2024 WL 3534690 (4th Cir. July 25, 2024) .........................................22

**Statutes**
8 U.S.C. §1226 .......................................................................................15

8 U.S.C. §1226(a) ..................................................................................21

8 U.S.C. §1231 .......................................................................................15

8 U.S.C. §1231(b)(3)(A) ................................................................ 6, 9, 16

8 U.S.C. §1252(g) ...................................................................... 3, 13, 14, 15

**Out of State Cases**
8 C.F.R. §1208.24(f) ..............................................................................21

iv

**Other Authorities**

Steve Vladeck, *Abrego Garcia, Constructive Custody, and Federal Judicial Power* (Apr. 5, 2025),
  https://www.stevevladeck.com/p/138-abrego-garcia-constructive-custody .........4

U.S. Gov't Accountability Office, *Immigration Detention* (Jan. 2021),
  https://www.gao.gov/assets/gao-21-149.pdf ......................................................12

## INTRODUCTION

In March 2025, federal agents seized Kilmar Armando Abrego Garcia in Maryland and, as the result of an "administrative error," removed him to El Salvador, in undisputed violation of a court order prohibiting his removal to that country. Abrego Garcia is now being held in a Salvadoran prison *solely* at the behest of the United States. He has no criminal record and is not wanted by the Salvadoran government. None of these facts is disputed.

At Friday's hearing, the United States[1] conceded that he "should not have been removed," SA098, and that it did not have a "satisfactory" answer as to why it could not bring him back, SA114.[2] Yet now it contends that it is powerless to do so and that an order requiring it to "facilitate" Abrego Garcia's return—as this Court has previously ordered the Government to do in other cases—is "intolerable." Worse, the Government argues that by defying the prior order *not* to remove Abrego Garcia to El Salvador, it has divested the courts of jurisdiction to right this wrong.

These arguments are meritless. There is no basis in this case to stay the injunction, which simply requires the Government to take routine action to restore the status quo and preserve Abrego Garcia's statutory and due process rights. The Government does not even argue that it would suffer irreparable harm absent a stay

---

[1] Defendants are referred to as "United States" or the "Government."

[2] "SA" refers to Plaintiffs' Supplemental Addendum filed in this Court.

1

because restoring the status quo prior to the wrongful removal inflicts no injury on the Government. The absence of any irreparable harm argument is fatal to its stay motion. The only one being irreparably harmed by the current state of affairs is Abrego Garcia, who is being incarcerated in the very country to which a court determined he could not be sent due to the "clear probability" of persecution there. SA008. "Particular to Abrego Garcia, the risk of harm shocks the conscience." SA163.

The Government also fails as to every other factor. Because it is not likely to succeed on the merits, the Government's motion mischaracterizes the district court's order. The court did *not* order the Government to "force El Salvador" to do anything. Rather, it directs the Government to "facilitate and effectuate" Abrego Garcia's return. Add002.[3] This Court and other circuits have repeatedly ordered the same relief. It is routine: "a matter of course." SA153; *see*, *e.g.*, *Ramirez v. Sessions*, 887 F.3d 693, 698 (4th Cir. 2018) ("As our sister circuits have done in similar circumstances, we grant this relief because judicial review would otherwise be frustrated if [petitioner] cannot be restored to the status he had before his removal.") (collecting cases).

---

[3] "Add" refers to the Government's Addendum filed in this Court.

The order does not intrude upon the President's authority to set foreign policy, or implicate foreign policy at all. Instead, it enforces a valid order of the immigration court and safeguards due process and statutory rights.

Nor does the Court lack jurisdiction. The Government contends (at 13) that its actions are insulated from scrutiny because "even if a removal runs afoul of some other legal bar (such as withholding relief), it is still the 'execution' of a 'removal order,'" which "strips district courts of jurisdiction" pursuant to 8 U.S.C. §1252(g). But the Government has already conceded that the purported removal order—which it failed to produce and appears nowhere in the record—"could *not* be used to send Mr. Abrego Garcia to El Salvador." SA102 (emphasis added). The Government's argument suggests that the executive branch may violate an immigration judge's order and, by doing so, deprive the courts of jurisdiction to enforce it. The district court made the chilling observation that the Government "cling[s] to the stunning proposition that they can forcibly remove any person—migrant and U.S. citizen alike—to prisons outside the United States, and then baldly assert they have no way to effectuate return because they are no longer the 'custodian,' and the Court thus lacks jurisdiction." SA151. That is not the law, and the Government unsurprisingly cites no precedent to support it.[4]

---

[4] "A world in which federal courts lacked the power to order the government to take every possible step to bring back to the United States individuals like Abrego

The Government further contends, by way of footnote (at 13 n.2), that Abrego Garcia's claims "sound in habeas" and are therefore beyond the court's power to remedy because he is "not in United States custody." This is sleight-of-hand. No law permits the Government to divest individuals of their Constitutional rights by the trick of paying another sovereign to jail them on its behalf. And, in any event, Abrego Garcia does not challenge his *detention*. He challenges his *removal*. SA151.

Neither equities nor public interest favor a stay. Six years after an immigration judge granted withholding of removal, the Government suddenly contends that Abrego Garcia represents a "danger" to the community. But he has never been charged with a crime, and the Government never moved to set aside the order withholding removal. Indeed, the Government admitted that it "made a choice here to produce no evidence," SA120, and that "the absence of evidence speaks for itself," SA128. Moreover, Abrego Garcia's conduct is irrelevant; the issue here is whether the Government may violate a court order and deport Abrego Garcia with no due process and no recourse. "[U]pholding constitutional rights surely serves the public interest." *Giovani Carandola, Ltd. v. Bason*, 303 F.3d 507, 521 (4th Cir. 2002).

---

Garcia is a world in which the government could send *any of us* to a Salvadoran prison without due process, claim that the misstep was a result of 'administrative error,' and thereby wash its hands of any responsibility for what happens next." Steve Vladeck, *Abrego Garcia, Constructive Custody, and Federal Judicial Power* (Apr. 5, 2025),**Error! Hyperlink reference not valid.** https://www.stevevladeck.com/p/138-abrego-garcia-constructive-custody.

The Court should deny the Government's stay motion.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

For years, Kilmar Armando Abrego Garcia lived in Beltsville, Maryland, with his wife, Plaintiff Jennifer Stefania Vasquez Sura (a U.S. citizen), and their three special needs children: D.T.V., X.T.V., and Plaintiff A.A.V. (all U.S. citizens). SA015; SA021. Abrego Garcia, a citizen of El Salvador, came to the United States as a teenager to escape gang violence targeting his family. SA002-003; SA145-146. He has never been charged with any crime. SA147; SA018; SA021.

In 2019, the Government commenced removal proceedings. SA146. Abrego Garcia moved for release on bond. SA146. The Government opposed, claiming he was an MS-13 gang member. SA146. The Government offered two pieces of "evidence": first, Abrego Garcia was wearing "his Chicago Bulls hat and hoodie," and second, "a vague, uncorroborated allegation from a confidential informant claiming he belonged to MS-13's 'Western' clique in New York—a place he has never lived." SA146 n.5; Add010-011. The immigration judge was "reluctant to give evidentiary weight to the Respondent's clothing as an indication of gang affiliation," but nevertheless refused to release Abrego Garcia on bond. Add047-048; SA146.

Abrego Garcia then sought relief from removal. SA001-002. During a full evidentiary hearing, Abrego Garcia offered his own sworn testimony, that of his

wife, Vasquez Sura, and voluminous evidence showing he was not a gang member and was eligible for protection under federal law. SA002-004; SA017.

The immigration judge ordered withholding of removal on October 10, 2019. SA014. The judge found Abrego Garcia "credible," observing that his "testimony was internally consistent, externally consistent" with the "substantial documentation," and "appeared free of embellishment." SA005. The judge further found that there was "a clear probability of future persecution" if Abrego Garcia returned to El Salvador. SA008. The judge therefore ordered that Abrego Garcia had the "right not to be deported" to El Salvador under 8 U.S.C. §1231(b)(3)(A). SA006; SA014. The Government never appealed that order, so it became final. SA147. Since 2019, Abrego Garcia has lived with his family in Maryland, working full time as a union sheet metal worker and dutifully appearing for annual check-ins with immigration authorities (most recently in January 2025). SA147.

On March 12, 2025, Abrego Garcia was arrested in front of his five-year old son, A.A.V., by ICE officers who falsely told him that his "status had changed." SA147; SA019. Three days later, Abrego Garcia was allowed to tell his wife that he was being deported to the Terrorism Confinement Center (**CECOT**) in El Salvador. SA020-021. Vasquez Sura has not heard from her husband since—but she has seen him in news photographs and videos of prisoners at CECOT. SA021-022.

On March 24, Plaintiffs filed suit and moved for a temporary restraining order. SA150. The Complaint and motion seek the same relief: "ordering Defendants to take all steps reasonably available to them, proportionate to the gravity of the ongoing harm, to return Plaintiff Abrego Garcia to the United States." Add024.

The Government opposed that request, despite acknowledging that Abrego Garcia's removal to El Salvador—which violated the 2019 order that granted withholding of removal—was an "administrative error." SA046; Add053. ICE Field Office Director Robert L. Cerna admitted that "ICE was aware of this grant of withholding of removal at the time Abrego-Garcia's removal from the United States." Add053.

After Plaintiffs filed their Complaint, Defendant Kristi Noem visited CECOT but took no steps to secure Abrego Garcia's return. SA040.

The district court held a hearing on April 4. At the hearing, the Government "concede[d] the facts"—that "the plaintiff, Abrego Garcia, should not have been removed." SA098.

At the end of the hearing, the court entered identical written and oral orders granting Plaintiffs' motion, which it construed as seeking a preliminary injunction. Add001. In its written opinion, it found that Abrego Garcia's removal to El Salvador was "wholly lawless," SA149, and that "U.S. officials secured his detention in a facility that, by design, deprives its detainees of adequate food, water, and shelter,

fosters routine violence; and places him with his persecutors," SA165. The court ordered the Government to "facilitate and effectuate the return" of Abrego Garcia by "11:59 PM on Monday, April 7, 2025." Add002.

The Government noticed an appeal, SA143, and now seeks to stay that order. The district court denied the Government's stay motion on April 6. SA166.

## ARGUMENT

## I.  THE GOVERNMENT DOES NOT SATISFY THE TEST FOR A STAY PENDING APPEAL.

A stay pending appeal is "extraordinary relief." *Williams v. Zbaraz*, 442 U.S. 1309, 1316 (1979) (Stevens, J., in chambers). A court considering such extraordinary relief must weigh four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 434 (2009) (citation omitted).

The Government asserts (at 9) that "the latter two factors merge" in "suits against the Government." Not so. These factors—harm to the opposing party and the public interest—merge only "when the Government is the opposing party" to the stay request. *Id.* at 435. Where, as here, "the government Defendants are applying for a stay and Plaintiffs are the opposing party," the third and fourth factors remain "distinct." *U.S. Navy Seals 1-26 v. Biden*, 27 F.4th 336, 353 (5th Cir. 2022).

**A.    The Government Has Not Made A Strong Showing Of Likely Success On The Merits.**

The Government conceded at the hearing below that its "only arguments are jurisdictional. We have nothing to say on the merits. We concede he should not have been removed to El Salvador." SA104. The Government's three jurisdictional arguments do not constitute the requisite "strong showing" of likely success on the merits.

**1.    The District Court's Order Is Proper And Possible.**

The Government's main argument (at 9) is that the order below "is neither possible nor proper." That is wrong on both counts.

The district court properly ordered the Government to "facilitate and effectuate" Abrego Garcia's return by "11:59 PM on Monday, April 7, 2025." Add002. Contrary to the Government's assertion (at 10), Plaintiffs did not disclaim such relief; rather, they requested it. SA088 (arguing that the Court has "jurisdiction to order them to facilitate his return, and what we would like is for the Court to enter that order"); *see also* SA085-087; SA074-075; Add024.

The district court issued this order because it found, among other things, that "Abrego Garcia was removed to El Salvador in violation of the Immigration and Nationality Act, specifically 8 U.S.C. §1231(b)(3)(A), and without any legal process." Add002; *see also* SA149 ("there were no legal grounds whatsoever for his arrest, detention, or removal."). This finding follows from the Government's

concession that it unlawfully removed Abrego Garcia, *see* SA098 ("The facts—we concede the facts. This person should—the plaintiff, Abrego Garcia, should not have been removed. That is not in dispute."); SA104 ("We concede he should not have been removed to El Salvador."), and from the Government's admission that there was no evidence that a lawful process led to the removal, SA100.

The Government's contentions (at 10-11) that the district court's order improperly encroached on the Executive's prerogative to manage foreign affairs are unavailing. Courts routinely exercise jurisdiction to protect individual rights, including in immigration cases, without impinging on the Executive's ability to conduct foreign affairs. "[A]n area concerning foreign affairs that has been uniformly found appropriate for judicial review is the protection of individual or constitutional rights from government action." *Flynn v. Shultz*, 748 F.2d 1186, 1191 (7th Cir. 1984) (collecting authorities).

Courts routinely order the Government to return, or facilitate the return, of individuals the Government wrongly removed to foreign countries—including El Salvador. *See, e.g.*, *Ramirez*, 887 F.3d at 707 (directing Government "to facilitate Ramirez's return to the United States" from El Salvador); *Gordon v. Barr*, 965 F.3d 252, 261 (4th Cir. 2020) (similar); *Nunez-Vasquez v. Barr*, 965 F.3d 272, 287 (4th Cir. 2020) (directing Government "to return Nunez-Vasquez to the United States"); *Orabi v. Att'y Gen.*, 738 F.3d 535, 543 (3d Cir. 2014) (similar). The Government

10

returns "wrongfully removed migrants as a matter of course." SA153; *see Nken*, 556 U.S. at 435 (discussing how removed individuals "can be afforded effective relief by facilitation of their return"); *Lopez-Sorto v. Garland*, 103 F.4th 242, 249-53 (4th Cir. 2024) (discussing ICE policy to facilitate returns).

This Court ruled two years ago that if a person removed to El Salvador is later awarded withholding of removal, then "the DHS and the Attorney General should swiftly 'facilitate his return to the United States' from El Salvador." *Garcia v. Garland*, 73 F.4th 219, 234 (4th Cir. 2023) (quoting *Ramirez*, 887 F.3d at 706). Here, Abrego Garcia *already* has been awarded withholding of removal and the Government concedes his removal in violation of that court order was erroneous. By vindicating Abrego Garcia's individual rights consistent with *Ramirez*, *Gordon*, *Nunez-Vasquez*, and *Garcia*, the district court acted within its authority.

The Government's "impossibility" argument fares no better. The argument is based on the Government's unsubstantiated assertion (at 9) that "the United States has no control over Abrego Garcia" and that it is as powerless to "effectuate" the return of Abrego Garcia as it is to "effectuate" the "end of the war in Ukraine." That is nonsense.

The Government's assertion that it lacks the ability to retrieve Abrego Garcia is unsupported by any record evidence, as the Government *conceded*. The district court asked: "why can't the United States get Mr. Abrego Garcia back"? SA114. The

Government responded: "[W]hen this case landed on my desk, the first thing I did was ask my clients that very question. I've not received, to date, an answer that I find satisfactory." SA114. There is no evidence in the record that supports the assertion that it is impossible for the United States to get Abrego Garcia back. That absence alone dooms the Government's motion.

In fact, the undisputed evidence shows that the Government *can* return Abrego Garcia. SA155. Abrego Garcia is being held in CECOT only because the U.S. Government is paying El Salvador $6 million to hold him (and others) there. SA148-149. As Defendant Kristi Noem, the Secretary of Homeland Security, stated that CECOT is "is one of the tools in *our* [the United States'] toolkit that we will use if you commit crimes against the American people." SA149; SA155. The U.S. Government functionally controls Abrego Garcia's detention—it has simply contracted with El Salvador to be the jailer.[5] As the district court put it: "[Y]ou have an agreement with this facility where you're paying the money to perform a certain service. And so it stands to reason that you can go to the payee and say, we need one of our detainees back." SA127; *see also* SA155 ("[J]ust as in any other contract

---

[5] ICE routinely pays other governmental entities to hold detainees. *See, e.g.*, U.S. Gov't Accountability Office, *Immigration Detention* (Jan. 2021), https://www.gao.gov/assets/gao-21-149.pdf, at PDF page 2 (showing 59% of ICE detainees housed under an intergovernmental service agreement), cited in SA070.

facility, Defendants can and do maintain the power to secure and transport their detainees, Abrego Garcia included.").

The court offered the Government the opportunity to submit contrary evidence. *E.g.*, SA120. The Government chose not to. Its attorney stated at the hearing: "the government made a choice here to produce no evidence," SA120, and his "clients understand that the absence of evidence speaks for itself," SA128. *See also Robertson v. Jackson*, 972 F.2d 529, 535 (4th Cir. 1992) (rejecting impossibility defense to injunction where Government had not shown impossibility).

The record lacks any evidence that the Government has even *attempted* to seek Abrego Garcia's return. That is the furthest thing from a "strong showing" that the Government is likely to prevail on its impossibility argument.

### 2.    Section 1252(g) Does Not Bar Jurisdiction.

The Government next contends (at 11-13) that 8 U.S.C. §1252(g) bars judicial review of claims challenging the Attorney General's decision to "execute removal orders against any alien under this chapter" (Chapter 12 of Title 8). Section 1252(g) is construed "narrowly," *Bowrin v. INS*, 194 F.3d 483, 488 (4th Cir. 1999) (citing *Reno v. AADC*, 525 U.S. 471, 482 (1999)), and it is inapplicable to removals conducted "not [as] part of Title 8, Chapter 12," *J.G.G. v. Trump*, 2025 WL 914682, at *28 (D.C. Cir. Mar. 26, 2025) (Millett, J., concurring).

13

The record is devoid of any order to remove Abrego Garcia. SA103 ("I do not have that order. It is not in the record."). "Even more disturbing, the Defendants concede that [they] cannot even produce the documents which reflect *any* authority, lawful or otherwise, to transfer him to El Salvador." SA161. Instead, the record contains an order that *prohibits* the Government from removing Abrego Garcia to El Salvador. SA001-014. Because of that order, the Government conceded below that any removal order "could not be used to send Mr. Abrego Garcia to El Salvador." SA102. Whatever authority the Government purported to be acting under when it removed Abrego Garcia to El Salvador, it was not executing a removal order under Title 8, Chapter 12. SA157.[6] Section 1252(g) is therefore inapplicable. *See Enriquez-Perdomo v. Newman*, 54 F.4th 855, 865 (6th Cir. 2022) (holding §1252(g) inapplicable "when a removal order is not subject to execution").

Even assuming Abrego Garcia's removal was pursuant to the execution of a removal order, §1252(g) would still be inapplicable. Section 1252(g) "strip[s] the federal courts of jurisdiction only to review challenges to the Attorney General's decision to exercise her *discretion* to initiate or prosecute these specific stages in the

---

[6] The Government asserts (at 12) that "there is no doubt that Abrego Garcia was removed pursuant to that order," but its only support is Plaintiffs' allegation that Defendants "decided to deport Plaintiff Abrego Garcia without following the law." Needless to say, an allegation Abrego Garcia was deported unlawfully does *not* show—and Plaintiffs dispute—that Abrego Garcia was removed pursuant to the execution of a removal order. SA157.

deportation process," including "execut[ing] removal orders." *Bowrin*, 194 F.3d at 488; *see also Madu v. Att'y Gen.*, 470 F.3d 1362, 1368 (11th Cir. 2006) ("section 1252(g) does not apply" to a challenge raising a non-discretionary bar to removal). Here, the order barring Abrego Garcia's removal to El Salvador was mandatory, not discretionary, so §1252(g) does not apply. SA157-158; *see also Kong v. United States*, 62 F.4th 608, 618 (1st Cir. 2023) (§1252(g) inapplicable where claim did not arise from "discretionary decision to execute removal"); *Arce v. United States*, 899 F.3d 796, 800 (9th Cir. 2018) ("§1252(g) is simply not implicated" when "the Attorney General totally lacks the discretion to effectuate a removal order.").

The cases the Government cites are inapposite. *Johnson v. Guzman Chavez*, 594 U.S. 523 (2021), concerned 8 U.S.C. §§1226 and 1231; it says nothing about §1252(g). In *Camarena v. Director, ICE*, "no one dispute[d] the validity—or the existence—of the petitioners' removal orders." 988 F.3d 1268, 1273 (11th Cir. 2021). So too in *E.F.L. v. Prim*, 986 F.3d 959, 964 (7th Cir. 2021) ("[E.F.L.] does not challenge the legality of her removal order."). And *Silva v. United States*, 866 F.3d 938, 940 (8th Cir. 2017), held that §1252(g) applies to "nondiscretionary" decisions, which is contrary to the law in this Court, *see Bowrin*, 194 F.3d at 488—and in other courts, *e.g.*, *Arce*, 899 F.3d at 801 ("[W]e find the analysis in Judge Kelly's [*Silva*] dissent much more persuasive.").

15

### 3. Habeas Does Not Provide The Exclusive Remedy, And, In Any Event, Habeas Relief Is Available.

In a footnote, the Government contends (at 13-14 n.2) that "Plaintiffs' claims sound in habeas, and would have had to have been brought via that exclusive remedy when Abrego Garcia was still within the United States." This Court does "not ordinarily entertain arguments made solely in a footnote," so it can disregard this argument. *United States v. Arbaugh*, 951 F.3d 167, 174 n.2 (4th Cir. 2020).

Nevertheless, Plaintiffs' core claims do not sound in habeas. SA150-152. Plaintiffs have pleaded claims for violations of 8 U.S.C. §1231(b)(3)(A), the Fifth Amendment, and the Administrative Procedure Act, each of which challenges Abrego Garcia's unlawful *removal* from the United States. Add019-023. Those claims do not challenge his *confinement*, and thus do not sound in habeas. SA151. Plaintiffs' fifth claim is a habeas claim, Add023, but it is pleaded in the alternative.

Moreover, the Government is wrong that habeas would be available only if Abrego Garcia "was still within the United States." Habeas can apply beyond the borders of the United States. *Boumediene v. Bush*, 553 U.S. 723 (2008). Here, as explained above in Section I.A.1, the undisputed evidence shows that the U.S. Government retains functional control over Abrego Garcia's detention by virtue of its agreement with El Salvador to house detainees at CECOT. SA151-152. That suffices for habeas jurisdiction. *See Abu Ali v. Ashcroft*, 350 F. Supp. 2d 28, 45-51 (D.D.C. 2004) (holding federal habeas jurisdiction exists for an individual detained

in Saudi Arabia at the behest of U.S. officials). Where, as here, a detainee is "held in federal detention in a non-federal facility pursuant to a contract," the detainee "should sue the federal official most directly responsible for overseeing that contract facility when seeking a habeas writ," *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1185 (N.D. Cal. 2017), or "the head of the agency in charge of interpreting and executing the immigration laws," *Jarpa v. Mumford*, 211 F. Supp. 3d 706, 724 (D. Md. 2016). That is what Plaintiffs have done. The Government's habeas arguments are unlikely to succeed.

### B.    The Government Does Not Show Irreparable Harm.

One of the two "most critical" *Nken* factors is "whether the applicant will be irreparably injured absent a stay." 556 U.S. at 434. Remarkably, the Government's motion does not argue that it will suffer irreparable harm without a stay. Its only references to irreparable injury are on pages 8-9, when it lists the *Nken* factors, and on pages 15 and 17, when it challenges the irreparable harms that Abrego Garcia will face without injunctive relief. The Government's failure to argue that it will be irreparably injured absent a stay is enough, by itself, to deny the stay motion. *See KalshiEX LLC v. CFTC*, 119 F.4th 58, 64 (D.C. Cir. 2024) (denying Government's motion for stay pending appeal "because a showing of irreparable harm is a necessary prerequisite for a stay"); *Doe #1 v. Trump*, 957 F.3d 1050, 1061 (9th Cir.

2020) ("[I]f a stay applicant cannot show irreparable harm, a stay may not issue, regardless of the petitioner's proof regarding the other stay factors.") (cleaned up).

Nor could the Government show irreparable harm here. The Government has conceded that Abrego Garcia "should not have been removed." SA098. Directing the Government to undo its error by bringing Abrego Garcia back is no injury at all, let alone injure irreparable injury.

To the extent the Government contends that the district court's order irreparably injures it by violating the separation of powers, that just repeats its jurisdictional argument. As previously explained, the court's order is consistent with this Court's well-established caselaw directing the Government to return, or facilitate the return, of wrongly removed individuals, and therefore such an order does not irreparably injure the Government. *See, e.g.*, *Ramirez*, 887 F.3d at 707.

### C.    A Stay Would Substantially Injure Plaintiff Abrego Garcia.

Even as the Government is silent about any irreparable harm it faces, it chides Abrego Garcia (at 15) for supposedly failing to offer any "irreparable harm that would justify this injunction." But the third *Nken* factor examines whether the stay will "substantially injure the other parties," not whether it will "irreparably" injure them. *See Nken*, 556 U.S. at 434.

In any event, as the district court found, Abrego Garcia's "continued presence in El Salvador … constitutes irreparable harm" to *him*. Add002; SA163-64. As the

immigration judge found when granting Abrego Garcia withholding of removal, Abrego Garcia faces "a clear probability of future persecution" in El Salvador. SA008. The Government defied that order by removing Abrego Garcia to El Salvador, in violation of his statutory and due process rights. SA160-162; SA104 ("We have nothing to say on the merits. We concede he should not have been removed to El Salvador."). "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).

More pressingly, Abrego Garcia is incarcerated in CECOT, "one of the most dangerous prisons in the Western Hemisphere," SA145, where he is subject to "some of the most inhumane and squalid conditions known in any carceral system." SA148. Detainees in CECOT face "the risk of torture, beatings, and even death," which "clearly and unequivocally supports a finding of irreparable harm." *J.G.G. v. Trump*, 2025 WL 890401, at *16 (D.D.C. Mar. 24, 2025). As the district court found, "the risk of harm shocks the conscience." SA163.

### D. The Public Interest Favors Denying A Stay.

Finally, the public interest weighs heavily against a stay. The Supreme Court recognized in *Nken* that "there is a public interest in preventing aliens from being wrongfully removed, particularly to countries where they are likely to face

substantial harm." 556 U.S. at 436. That is the exact situation Abrego Garcia is in: the immigration judge ordered withholding of removal precisely because Abrego Garcia faces persecution in El Salvador, SA008; SA013. Thus, as the district court found, "the balance of equities and the public interest weigh in favor of returning him to the United States." Add002; SA164-165.

In addition, "the public undoubtedly has an interest in seeing its governmental institutions follow the law." *Vitkus v. Blinken*, 79 F.4th 352, 368 (4th Cir. 2023) (cleaned up). The Government must follow the orders of its immigration courts, or such orders and courts become meaningless. When, as here, the Government admitted error, the public interest lies in correcting that error, not prolonging it.

The Government asserts (at 16) that the immigration judge's order finding that Abrego Garcia faces persecution in El Salvador is "dubious" and "untenable." But the Government did not even appeal it and that order remains valid and binding. SA001. As the Government concedes (at 16-17), it has procedures available to it to seek to reopen the immigration judge's order, but "the Government did not avail itself of that procedure in this case."

The Government now argues (at 14-17) that the public interest favors a stay because it asserts that Abrego Garcia is a member of the violent MS-13 gang. Below, the Government "did not assert … that Abrego Garcia was an 'enemy combatant,' an 'alien enemy' under the Alien Enemies Act, … or removable based on MS-13's

recent designation as a Foreign Terrorist Organization." SA145 n.2. And the Government "offered no evidence linking Abrego Garcia to MS-13 or to any terrorist activity." SA145 n.2. The flimsy "evidence" of gang membership from a bail hearing—a Bulls hat, hoodie, and anonymous tip that Abrego Garcia had purportedly participated in gang activity in a place he never visited, SA146 n.5—*preceded* the immigration judge's finding that voluminous evidence and testimony warranted granting withholding of removal in 2019. Indeed, Abrego Garcia has never been charged with or convicted of any crime. SA147; SA018; SA021.

More fundamentally, the issue in this case is improper *removal*, not *detention*. Once Abrego Garcia is returned to the United States, the Government may seek to challenge the withholding of removal, *see* 8 C.F.R. §1208.24(f), and an immigration court would determine whether Abrego Garcia should be detained pending such proceedings, *see* 8 U.S.C. §1226(a). That is the forum—not this Court—for adjudicating the Government's attacks on Abrego Garcia.

## II. THE COURT SHOULD DENY AN ADMINISTRATIVE STAY.

The "point" of an administrative stay is "to minimize harm while an appellate court deliberates, so the choice to issue an administrative stay reflects a first-blush judgment about the relative consequences of staying the lower court judgment versus allowing it to go into effect." *United States v. Texas*, 144 S. Ct. 797, 798 (2024)

(Barrett, J., concurring in the denial of applications for stay). The *Nken* factors "can influence the stopgap decision, even if they do not control it." *Id.* at 799.

Here, the path to minimize harm is to deny an administrative stay. Every moment Abrego Garcia remains in El Salvador constitutes "irreparable harm" to him. Add002; SA163-164. An administrative stay that prolongs his time in El Salvador will *inflict*, rather than *minimize*, harm. Detainees in CECOT face "the risk of torture, beatings, and even death," *J.G.G.*, 2025 WL 890401, at *16, while being "denied communication with their relatives and lawyers," Add025. The Government identifies no countervailing harm at all, let alone sufficient harm to outweigh the grave and irreparable harm Abrego Garcia suffers daily. These reasons to deny an administrative stay are bolstered by the *Nken* factors, which, cut decisively against any stay. *See also Zayre-Brown v. N.C. Dep't of Adult Corrections*, 2024 WL 3534690, at *1 (4th Cir. July 25, 2024) (denying administrative stay).

## CONCLUSION

The Court should deny the stay motion.

Dated: April 6, 2025

/s/ Simon Y. Sandoval-Moshenberg

**MURRAY OSORIO PLLC**
Simon Y. Sandoval-Moshenberg
4103 Chain Bridge Road, Suite 300
Fairfax, Virginia 22030
(703) 352-2399
ssandoval@murrayosorio.com

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Stephen E. Frank
Laya Maheshwari
111 Huntington Ave, Suite 520
Boston, MA 02199
(617) 712-7100
stephenfrank@quinnemanuel.com
layamaheshwari@quinnemanuel.com

/s/ Jonathan G. Cooper

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Jonathan G. Cooper
Olivia Horton*
1300 I St. NW, Suite 900
Washington, DC 20005
(202) 538-8000
jonathancooper@quinnemanuel.com
oliviahorton@quinnemanuel.com
*admitted in Texas; not admitted in D.C. Supervised by attorney admitted in D.C.*

Andrew J. Rossman
Sascha N. Rand
K. McKenzie Anderson
Ellyde R. Thompson
Samuel P. Nitze
Courtney C. Whang
Sam Heavenrich
Victoria Martin
Arman Cuneo
Roey Goldstein
295 Fifth Avenue, 9th Floor
New York, NY 10016
(212) 849-7000
andrewrossman@quinnemanuel.com
sascharand@quinnemanuel.com
mckenzieanderson@quinnemanuel.com
ellydethompson@quinnemanuel.com
samuelnitze@quinnemanuel.com
courtneywhang@quinnemanuel.com
samheavenrich@quinnemanuel.com
victoriamartin@quinnemanuel.com
armancuneo@quinnemanuel.com
roeygoldstein@quinnemanuel.com

*Counsel for Plaintiffs-Appellees*

## CERTIFICATE OF COMPLIANCE

1. This brief complies with type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(A) because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f), this brief contains 5178 words.

2. This brief complies with the typeface and type style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it has been prepared in a proportionally spaced typeface (14-point Times New Roman) using Microsoft Word 365.

Dated: April 6, 2025                    */s/ Jonathan G. Cooper*
                                         Jonathan G. Cooper
                                         *Counsel for Plaintiffs-Appellees*